# UNITED STATES DISTRICT COURT

for the

Western District of Washington

_____ FILED _____ LODGED
_____ RECEIVED

**February 5, 2021**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.    MJ21-5031
One (1) Subject Vehicle and Two (2) Subject Devices, )
more fully described in Attachment's A-1,A-2,and )
A-3 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

One (1) Subject Vehicle and Two (2) Subject Devices, more fully described in Attachment's A-1,A-2,and A-3

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B and B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Possession with intent to distribute, and conspiracy to distribute controlled substances, including methamphetamine |

The application is based on these facts:

✓ See Affidavit of FBI Task Force Officer Colton Price, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Colton Price, FBI Task Force Officer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⊙ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____02/05/2021_____

*Judge's signature*

City and state: Tacoma, Washington

David W. Christel, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A-1**

**SUBJECT VEHICLE to be Searched**

A 2004 Dodge Ram 2500 truck with VIN number of 3D7KU28C84G245546 and Washington license plate C90084M, attached to the rear bumper. This vehicle has four doors, is red color, with large aftermarket front and rear bumpers that are black in color. The vehicle is located in the sally-port of the Vancouver Police Department West Precinct, 2800 NE Stapleton Rd, Vancouver, Washington. A photo of the truck is below:



UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A-2

### SUBJECT DEVICE-1 to be Searched

A blue Nokia brand cellular telephone associated with phone number 360-947-1605. This phone has a cracked screen with a sticker on the back that says "Soul Tech."  The phone is currently located in a locked, two-drawer filing cabinet in the Major Crimes office of the Vancouver Police West Precinct, 2800 NE Stapleton Rd, Vancouver, Washington.

Photographs of the front and back of the phone are below:





UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## **ATTACHMENT A-3**

### **SUBJECT DEVICE-2 to be Searched**

An iPhone, which is attached to the driver's side vent of SUBJECT VEHICLE listed in Attachment A-1, a 2004 Dodge Ram 2500, which vehicle is located in the sally-port of the Vancouver Police Department West Precinct, 2800 NE Stapleton Rd, Vancouver, Washington. The iPhone is in a blue case.

Photographs of the iPhone in place within the SUBJECT VEHICLE are below:



Attachment to Affidavit and Search Warrant - 3

**ATTACHMENT B**

**Items to be seized from the SUBJECT VEHICLE listed in Attachment A-1**

From the SUBJECT VEHICLE described in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes:  distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846:

- Controlled Substances, including, but not limited to, methamphetamine;
- Items used to store and distribute illegal drugs, such as plastic bags, cutting agents, scales, measuring equipment, storage containers, lock boxes, safes, and similar items;
- Drug Transaction Records:   Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of methamphetamine;
- Customer and Supplier Information:   Items identifying drug customers and drug suppliers, such as, telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and similar items;
- Cash and Financial Records:   Currency and financial records that show income from, or activity related to, drug trafficking, including bank records, money transfer records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth including receipts for personal property, negotiable instruments, bank drafts, cashier's checks, and similar items;
- Photographs:   Photographs, video tapes, digital cameras, and similar items depicting the property occupants, suspected buyers or sellers of controlled substances,

firearms, controlled substances, drug distribution paraphernalia, and assets derived from the distribution of methamphetamine;

- **Property Records:** Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, or control of the premises, and similar records of other property owned or rented by the occupants that is evidence of income from drug trafficking and locations of drugs and money;

- Firearms and ammunition, and records related to the purchase, sale, or other transfer of firearms and ammunition;

- Indicia of ownership or use of any of the places to be searched; and

- **Cell Phones:** Cellular telephones and other wireless telephone devices, other than SUBJECT DEVICE-2, may be seized.

Attachment to Affidavit and Search Warrant - 5

1
2

**ATTACHMENT B-1**

**Items to be Searched for and Seized from SUBJECT DEVICES**

3    This warrant authorizes the search for the following items in the SUBJECT
4  DEVICES described in Attachments A-2 and Attachment A-3:

5    Evidence, fruits, and/or instrumentalities of the commission of the following
6  crimes:  Distribution of, and possession with intent to distribute, controlled substances, in
7  violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute controlled substances, in
8  violation of 21 U.S.C. §846; ~~use of a communications facility in furtherance of a felony~~
9  ~~drug offense, in violation of 21 U.S.C. § 843(b); money laundering, in violation of 18~~    DWC
10 ~~U.S.C. § § 1956 and 1957; possession of a firearm in furtherance of a drug trafficking~~
   ~~offense, in violation of 18 U.S.C. § 924(c); and unlawful possession of a firearm, and~~
11 ~~alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)~~.

12
13    ▪    Assigned telephone number and identifying serial number (e.g., ESN, MIN,
   IMSI, IMEI);

14    ▪    Stored list of recent received, sent, or missed calls;
15    ▪    Stored address records and stored contact information;
16    ▪    Stored digital images/video of narcotics, narcotics, cash or cash
17 equivalents, firearms or other weapons, or related to the aforementioned crimes of
18 investigation, or photographs that may show the user of the phone and/or co-conspirators,
19 including any embedded GPS data associated with these photographs;

20    ▪    Stored text messages related to narcotics, cash or cash equivalents,
21 firearms, or other activity related to the aforementioned crimes of investigation, including
22 but not limited to Facebook Messenger, Apple iMessages, Signal, WhatsApp, or other
23 similar messaging services where the data is stored on the telephone;

24    ▪    Stored records, receipts, videos, notes, ledgers, and other documents
25 relating to the distribution of controlled substances and communications between
26 members of the conspiracy.

27
28

Attachment to Affidavit and Search Warrant - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**AFFIDAVIT**

2

3    STATE OF WASHINGTON        )

4                              )    ss

     COUNTY OF CLARK            )

5

6        I, Colton Price, being first duly sworn on oath, depose and state:

7                **INTRODUCTION AND AGENT BACKGROUND**

8        1.    I am an "investigative or law enforcement officer of the United States"

9    within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of

10   the United States who is empowered by law to conduct investigations of, and to make

11   arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

12       2.    I am a Task Force Officer (TFO) with the Federal Bureau of Investigation

13   (FBI) Southwest Washington Interagency Gang Enforcement Team Safe Streets Task

14   Force and have been so employed since October 2020.  I am currently assigned to FBI

15   Seattle Division's Vancouver Resident Agency (VRA) in Vancouver, Washington,

16   focusing on the investigation of organized crime, gangs, drug trafficking, and other

17   criminal matters. I am also a Vancouver Police Department (VPD) police officer and

18   have been so employed by VPD since October 2012.

19       3.    Since becoming a Washington State police officer, I have received

20   specialized training from VPD, to include completing the 21-week Washington State

21   Criminal Justice Training Academy.  I have participated in multiple drug investigations

22   targeting large scale drug trafficking organizations (DTOs) as an investigating officer.

23   During my tenure as an officer, I have been involved in dozens of investigations

24   involving illegal firearm possession and controlled substance distribution.  I have

25   debriefed defendants and witnesses who had personal knowledge regarding drug

26   trafficking organizations.  Additionally, I have participated in many aspects of drug

27   investigations, including conducting physical surveillance, confidential source

28

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 1

1  management, providing testimony at trials, preparing search warrant affidavits, executing
2  search warrants, and making arrests.

3      4.    Based upon my training and experience, I am familiar with drug traffickers'
4  methods of operation, including their methods of distribution, storage, and transportation
5  of drugs, their methods of collecting proceeds of drug trafficking, and their methods of
6  laundering money.  I am also familiar with methods employed by large-scale DTOs to
7  avoid detection by law enforcement, including the use of cellular telephone technology,
8  text messages, counter surveillance, false or fictitious identities, and encoded
9  communications. I am also familiar with the appearance of controlled substances,
10  including, but not limited to, methamphetamine.

11      5.    The facts in this affidavit are based upon knowledge I gained from my
12  investigation, my personal observations, my training and experience, and information
13  provided by other law enforcement officers, agents, or analysts.  I am not providing all
14  information about this investigation, but rather information in a summary fashion that I
15  believe is pertinent to a fair determination of probable cause for the requested search
16  warrant.

17      6.    This Complaint is being presented by electronic means pursuant to Local
18  Criminal Rule CrR 41(d)(3).

19      **PURPOSE OF AFFIDAVIT**

20      7.    This affidavit is submitted in support of an application to search the
21  following:

22      **Subject Vehicle**

23      a)    A 2004 Dodge Ram 2500 truck, currently located in the sally-port of the
24  Vancouver Police Department West Precinct, 2800 NE Stapleton Rd, Vancouver,
25  Washington. This vehicle has VIN number: 3D7KU28C84G245546. This vehicle has four
26  doors, is red in color, with large, aftermarket front and rear bumpers that are black in color.
27  This vehicle has Washington license plate C90084M attached to the rear bumper. Per
28  Washington State Department of Licensing records I have reviewed, this vehicle is

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 2

1    registered to Butch A. Gramer, with a listed address of 1105 SE 145th Court in City of

2    Vancouver, Clark County, Washington;

### Subject Devices (2)

4        b).    a blue Nokia brand cellular telephone with phone number 360-947-1605

5    (SUBJECT DEVICE-1), which is currently located in a locked, two-drawer filing cabinet

6    in the Major Crimes office of the Vancouver Police West Precinct, 2800 NE Stapleton

7    Rd, Vancouver, Washington. This office is locked and is only accessible to detectives.

8    This phone has a cracked screen with a sticker on the back that says "Soul Tech;"

9        c).    an iPhone in a blue case (SUBJECT DEVICE-2), which is currently

10   attached to the driver's side vent of the above-mentioned 2004 Dodge Ram 2500, and is

11   thus located in the sally-port of the Vancouver Police Department West Precinct, 2800

12   NE Stapleton Rd, Vancouver, Washington.  The phone number to this phone is unknown.

13       8.    As described below, law enforcement took possession of the above three

14   items on February 3, 2021. When referenced together SUBJECT DEVICE-1 and

15   SUBJECT DEVICE-2 are referred to as the SUBJECT DEVICES.  Hereafter, when

16   referenced together the SUBJECT VEHICLE and the SUBJECT DEVICES are referred

17   to as the SUBJECT ITEMS.  Since February 3, 2021, the SUBJECT ITEMS have

18   remained in the secure custody of law enforcement.  As described below, I believe there

19   is evidence in the SUBJECT VEHICLE and on the SUBJECT DEVICES relevant to an

20   ongoing investigation into drug trafficking in the Western District of Washington.

21       9.    I am seeking authority to search the SUBJECT ITEMS for evidence, fruits,

22   instrumentalities of Title 21, United States Code, Sections 841 and 846, as described in

23   Attachment B.

### SUMMARY OF PROBABLE CAUSE

25   A.    **Investigation of Derek Williams**

26       10.    FBI agents based in Vancouver, Washington and the Southwest

27   Washington Interagency Gang Enforcement Team (SWIGET) have been investigating

28   DEREK W. WILLIAMS ("WILLIAMS") for the past several months for his involvement

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 3

1   in a conspiracy to distribute controlled substances, including methamphetamine, in

2   violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3        11.   On September 23, 2020 Clackamas County Interagency Task Force

4   (CCITF) out of Clackamas County, State of Oregon, conducting a methamphetamine

5   distribution and manufacturing case on Derek W. Williams (Year of birth: 1974) and

6   Debra Sorensen.  This case is documented under Clackamas report #20-070247 and 20-

7   070252.  During this incident CCITF received information that Debra Sorensen was

8   returning from Mexico en route to the Portland metropolitan area with a large quantity of

9   methamphetamine.  CCITF confirmed through Homeland Security Investigations (HSI)

10  that Sorensen had crossed the Mexican border into the United States on September 19,

11  2020 driving a burgundy in color 2003 Chevrolet Tahoe bearing Oregon license plate

12  #439MKJ.

13       12.   On September 23, 2020 members of CCITF located Derek Williams and

14  Debra Sorensen driving a burgundy in color 2003 Chevrolet Tahoe in La Pine, State of

15  Oregon.  CCITF attempted a traffic stop in the area of Government Camp, State of

16  Oregon.  The Tahoe failed to stop for a police vehicle with activated emergency lights

17  and a pursuit was initiated.  The Tahoe was eventually stopped after an extended vehicle

18  pursuit with the use of spike strips and a Pursuit Intervention Technique (PIT).  Williams

19  and Sorensen were subsequently arrested.  Sorensen admitted to driving to Mexico and

20  California multiple times for Derek Williams to pick up methamphetamine.  Sorensen

21  believed Williams threw a bag out the window of the Tahoe during this pursuit.  Sorensen

22  believed the bag contained "7 to 10 pounds" of methamphetamine.  Williams was

23  subsequently arrested for Possession with Intent to Deliver Methamphetamine and

24  Manufacturing.

25       13.   Derek Williams has arrests in the State of Oregon for Possess of

26  Destructive Device, Felon in Possession of a Weapon, Attempt to Elude, Reckless

27  Driving, Reckless Endangering, Possession of Methamphetamine with Intent to Deliver

28  and Manufacturing.

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      Debriefing of Confidential Human Source-1.**

14.      Between January 28, 2021 and January 31, 2021, I met with a confidential human source (hereinafter referred to as CHS-1), who told me they were aware of Derek W. Williams trafficking large amounts of methamphetamine in the Clark County, Washington area. CHS-1 stated they knew Williams had made several trips to California to purchase large amounts of methamphetamine for the purpose of bringing it back to the Clark County area and selling it. At this time, CHS-1 believed Williams to be "out of town" and more than likely "making a run to California." I understood this to mean that Williams was picking up a load of methamphetamine. More recently, CHS-1 stated Williams transported several pounds of methamphetamine to a hotel in Portland, Oregon where it was broken down into smaller amounts and sold. CHS-1 gave a brief account of what happened in Clackamas County, Oregon which is mentioned above.

15.      Additionally, CHS-1 advised Williams had recently purchased a red truck. CHS-1 was not sure of the make or model of the red truck, but the CHS knew the truck was "big."

16.      On February 3, 2021, CHS-1 informed me that Williams was in the Clark County area and was in possession of a large amount of methamphetamine. Additionally, the CHS-1 told me that Williams' cell phone number was 360-947-1605. CHS-1 said this phone number was used by Williams to organize methamphetamine sales. Several members of SWIGET began checking possible locations for Williams and a "big" truck.

17.      On February 3, 2021 at approximately 1440 hours, members of SWIGET located several large trucks at 7204 Indiana Street, City of Vancouver, Clark County, Washington. This address is a location that law enforcement knew Williams to frequent. Surveillance was established on the residence by members of SWIGET.

18.      CHS-1 has been in contact with the Vancouver Police Department for several weeks. CHS-1 is providing information in exchange for a positive recommendation on a pending criminal matter. During my conversations with CHS-1, he/she has demonstrated that he/she is familiar with the appearance, use, effects,

1   packaging, price and sale of methamphetamine. CHS-1 told me they have seen

2   methamphetamine, bought methamphetamine, and ingested on occasion and have used

3   and sold methamphetamine in the past

4        19.    CHS-1 has been motivated to assist law enforcement in exchange for a

5   positive recommendation on a pending criminal matter. I have reviewed the criminal

6   history for CHS-1 and have found CHS-1 does not have any convictions (misdemeanor

7   or felony). I have found CHS-1's information to be reliable and credible during my

8   investigations and dealings with him/her. CHS-1 was found in possession of approximately

9   ½ oz of methamphetamine in October 2019.  Law enforcement officers agreed to not

10  forward this offense to the Clark County Prosecuting Attorney's office, in exchange for

11  continued, truthful cooperation. CHS-1 has assisted law enforcement by providing

12  information since approximately that time. CHS-1 has not received any other benefit such as

13  payment or things of value. CHS-1 wishes to remain anonymous and fears retaliation from

14  the defendant and the defendant's associates if CHS-1 is identified.

15       20.    As to the informant's basis of knowledge, CHS-1 has previously used

16  methamphetamine on several occasions. CHS-1 is familiar with how drugs are packaged,

17  sold, and consumed. CHS-1 has positively identified methamphetamine, packaging

18  material, and paraphernalia used to consume methamphetamine to your affiant. CHS-1

19  has also admitted he/she has been involved in illegal drug sales, and illegal drug

20  purchases of methamphetamine on many occasions in the past.

21  **C.    Information from Confidential Human Source-2**

22       21.    Between February 1, 2021 and February 3, 2021, I met with Confidential

23  Human Source 2 (hereafter CHS-2) who told me they were aware of Derek W. Williams

24  trafficking large amounts of methamphetamine in the Clark County, Washington area.

25  Additionally, CHS-2 stated they Williams in possession of a large amount of what CHS-2

26  knew to be methamphetamine between February 1, 2021 and February 3, 2021. CHS-2

27  estimated the amount methamphetamine possessed by Williams to be over one pound.

28  CHS-2 stated the methamphetamine possessed by Williams was contained in a large Zip-

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

1 | Loc styled plastic bag. CHS-2 also told me he/she recently saw Williams in possession of
2 | a large amount of U.S. currency.

3 |      22.    CHS-2 has been in contact with the Vancouver Police Department for
4 | several weeks.  CHS-2 is providing information in exchange for monetary compensation.
5 | During my conversations with CHS-2, he/she has demonstrated that he/she is familiar
6 | with the appearance, use, effects, packaging, price and sale of methamphetamine. CHS-2
7 | told me they have seen methamphetamine, bought methamphetamine, and ingested it on
8 | occasion and have used and sold methamphetamine in the past.

9 |      23.    CHS-2 was initially made reliable with a controlled purchase of
10 | methamphetamine. In the presence of Vancouver Police detectives, CHS-2 contacted a
11 | known methamphetamine dealer in the Clark County, Washington area and arranged the
12 | purchase of methamphetamine. Before the controlled purchase, CHS-2 was searched for
13 | controlled substances, weapons and money. No controlled substances, weapons, or
14 | money were located. CHS-2 was then provided with an amount of U.S. Currency to
15 | purchase methamphetamine. CHS-2 was then escorted to a predetermined location and
16 | was kept under constant observation until he/she entered that location to conduct the pre-
17 | arranged purchase of methamphetamine. A short time later, CHS-2 left the location and
18 | was kept under constant observation until met by detectives at a prearranged location.
19 | Upon meeting with detectives, CHS-2 provided an amount of substance which was
20 | consistent with the amount of money provided for the controlled buy. CHS-2 identified
21 | the substance as methamphetamine. The substance was field tested, which tested positive
22 | for the presence of methamphetamine.

23 |      24.    As to the informant's motivation, CHS-2 has been motivated to assist law
24 | enforcement for monetary compensation. CHS-2 wishes to remain anonymous and fears
25 | retaliation from the defendants and the defendant's associates. Your affiant is aware of
26 | CHS-2 having a criminal history including convictions for controlled substance
27 | possession, assault, and driving with a suspended license.  I have found CHS-2's

28 |

1  information to be reliable and credible during my investigations and dealings with
2  him/her.

3       25.    As to the informant's basis of knowledge, CHS-2 has previously used
4  methamphetamine.  CHS-2 is familiar with how drugs are packaged, sold, and consumed.
5  CHS-2 has positively identified methamphetamine, packaging material, and
6  paraphernalia used to consume methamphetamine to your affiant. CHS-2 has also
7  confirmed he/she has been involved in both, illegal drug sales, and illegal drug purchases
8  of methamphetamine in the past.

9  **D.    Statement of Task Force Officer Dennis Devlin**

10      26.    On February 3, 2021 I was assigned as a Detective with the Vancouver
11 Police Department and a Task Force Officer with SWIGET.  I was requested to assist
12 TFO Price with a drug investigation involving Derek W. Williams, (year of birth: 1974).
13 I am familiar with Williams and have arrested him on two separate occasions and have
14 interviewed him in person.

15      27.    I was tasked with conducting surveillance at 7204 Indiana Street where
16 Williams was believed to be and was associated with a large red pickup truck.  I was
17 parked about 200 yards west of the residence.  At about 1445 hours I observed a red
18 Dodge pickup truck pull out of the target residence and park on the street, facing me.
19 With the use of binoculars, I positively identified Williams as driving the red Dodge
20 Pickup.  I observed Williams exit the truck and walk back to the residence.  Williams was
21 wearing a dark heavy jacket and blue jeans.  About 15 minutes later Williams returned to
22 the Dodge and pulled it back into the driveway and out of my view.

23      28.    At about 1540 hours members of SWIGET made contact at the residence.
24 As I walked up to the garage where the Dodge pickup was parked, partially inside the
25 garage and partially outside of the garage, I observed Derek Williams sitting in the
26 garage behind the Dodge.  Williams was wearing the same clothing I observed him
27 wearing earlier, and again confirmed he was the person I observed driving the Dodge
28 truck earlier.  Williams retreated inside the residence and subsequently fled on foot

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  through the neighborhood.  Williams has not yet been located (as of Thursday, February

2  4, 2021).

3  **E.    Contact of Derek Williams at 7204 Indiana Street, Vancouver, WA**

4          29.    At about 1540 hours members of the Safe Streets Task Force made contact

5  at 7204 Indiana Street in Vancouver, Washington. Williams was contacted inside of the

6  garage but did not wish to exit and speak with us. I asked Williams if the Dodge Ram

7  belonged to him. Williams denied owning the vehicle. I asked him if he knew who owned

8  the vehicle and he said, "Butch." I asked Williams if he knew Butch's last name and he

9  answered "Gramer." This information matches the Washington State Department of

10 Licensing information listed above. This also shows Williams having knowledge of the

11 vehicle and the registered owner. Further, Williams claimed that Butch Gramer drove the

12 vehicle to 7204 Indiana Street but had left.

13         30.    Task Force Officers on scene told Williams we wished to speak with him

14 about his methamphetamine trafficking and asked if he would step out of the garage and

15 speak with us. Williams retreated inside the residence and subsequently fled on foot

16 through the neighborhood.  Williams was not located.

17         31.    A female who was present at 7204 Indiana Street exited the residence and

18 handed the blue Nokia cell phone (SUBJECT DEVICE 1) to TFO Rees Campbell. The

19 female stated the phone did not belong to her and she did not want the phone at the

20 house. I called the phone number that the CHS had identified as Williams' phone number

21 (360-947-1605) since I thought the phone may have belonged to Williams. The phone

22 that TFO Campbell had received from the female then began to ring. I thus have probable

23 cause to believe the blue Nokia phone belongs to Williams.

24         32.    On February 3, 2021, SUBJECT DEVICE 1 was placed in a locked file

25 cabinet in the Major Crimes office at the Vancouver Police West Precinct, 2800 NE

26 Stapleton Rd, Vancouver, Washington, pending the application of this search warrant.

27 **F.    Dodge Ram Pickup Truck and K-9 Alert.**

28

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

33.     Officers requested an evidence tow truck for the Dodge Ram truck (the SUBJECT VEHICLE), which arrived at 7204 Indiana Street and towed the Dodge to the Vancouver Police Department West Precinct shortly thereafter. No one entered the Dodge Ram from the time police arrived at 7204 Indiana Street to the time it arrived at Vancouver Police Department's West Precinct. The Dodge Ram was followed to VPD West Precinct. The Dodge Ram was secured in the sally-port with evidence tape on all entry points of the vehicle. The Dodge Ram was locked, and I have the keys to the vehicle in my possession.

34.     With the Dodge Ram secured in VPD West Precinct sally-port, Vancouver Police Department K9 Officer R. Epperson and his K9 partner Koa were called to conduct a drug sniff of the vehicle. The training and experience of Officer Epperson and K-9 Koa is attached to this Affidavit at Attachment C. The following information comes from Officer Epperson's report on this incident:

35.     Prior to deploying PSD Koa, Epperson walked around the vehicle and did not notice anything of interest. After Epperson walked around the vehicle, he returned to his patrol vehicle and retrieved PSD Koa. He walked PSD Koa to the front of the vehicle, and he told him to sit. PSD Koa responded to the command. He then gave PSD Koa the command to search.

36.     PSD Koa started his search pattern and sniffed the front of the vehicle and down the driver's side of the vehicle. When he reached the rear of the vehicle, he started to sniff it, but turned and briefly went back towards the driver's side. He sniffed back up the driver's side of the vehicle for a few feet and then returned to the rear of the vehicle. PSD Koa sniffed the rear of the vehicle and the passenger's side of the vehicle until he returned to the front of the vehicle. When PSD Koa sniffed the driver's side and the passenger's side, Epperson saw that PSD Koa was sniffing under the vehicle near the rocker panels of the vehicle. According to Epperson, this was not surprising because this vehicle stood higher than normal since it was "lifted" and had large wheels on it.

37.     When PSD Koa reached the front of the vehicle, his search pattern continued, and he sniffed the driver's side of the vehicle. Epperson saw that this time PSD Koa's head was higher and that he was sniffing the lower door seams of the vehicle. When PSD Koa reached the junction of the lower seam and the seam at the rear of the driver's side rear passenger's door, his pace slowed. Then Epperson heard him deeply inhale as he stared at the seam. Then PSD Koa sat. After PSD Koa sat, Epperson gently pulled on his leash and he remained in a seated position. Based on Officer Epperson's training and experience working with PSD Koa (as set forth in Attachment C), Epperson recognized that PSD Koa's change of behavior as a positive alert to the odor of illegal narcotics. Epperson reported his findings to Det. Price.

**Criminal History of Derek Williams**

38.     A criminal history check on Derek W. Williams, date of birth of May 20, 1974, shows 13 felony convictions in the State of Washington.  These convictions include six convictions for possession of controlled substances, multiple convictions for possession of a controlled substance with intent to deliver, Forgery, and Burglary II. Williams has four gross misdemeanor convictions in the State of Washington for Malicious Mischief III, Obstructing Law Enforcement Officer, Assault IV, and Hit and Run-Attended-Property.

**COMMON CHARACTERISTICS OF DRUG TRAFFICKERS**

39.     Based upon my training, experience, and participation in this and other investigations involving drug trafficking, my conversations with other experienced investigators, and interviews of individuals who have been involved in the trafficking of methamphetamine, heroin, oxycodone, and other drugs, I have learned and know the following.

40.     Drug traffickers use mobile electronic devices, including cellular telephones, to conduct their illegal trafficking business.  As described below, such equipment often contains evidence of these illegal activities.

1      41.    Traffickers of controlled substances commonly maintain addresses,

2  vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

3  telephone numbers of their suppliers, customers, and associates in the trafficking

4  organization, and it is common to find drug traffickers keeping records of said associates

5  in cellular telephones and other electronic devices.  Traffickers often maintain cellular

6  telephones for ready access to their clientele and to maintain their ongoing narcotics

7  business.  Traffickers frequently change their cellular telephone numbers to avoid

8  detection by law enforcement, and it is common for traffickers to use more than one

9  cellular telephone at any one time.

10      42.    Drug traffickers use cellular telephones as a tool or instrumentality in

11  committing their criminal activity.  They use them to maintain contact with their

12  suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

13  can be purchased without the location and personal information that land lines require.

14  Second, they can be easily carried to permit the user maximum flexibility in meeting

15  associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

16  Third, they can be passed between members of a drug conspiracy to allow substitution

17  when one member leaves the area temporarily.  Since cellular phone use became

18  widespread, every drug dealer I have interacted with has used one or more cellular

19  telephones for his or her drug business.  I also know that it is common for drug traffickers

20  to retain in their possession phones that they previously used, but have discontinued

21  actively using, for their drug trafficking business.  Based on my training and experience,

22  the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or

23  crimes.  This includes the following:

24      a.    The assigned number to the cellular telephone (known as the mobile

25  directory number or MDN), and the identifying telephone serial number (Electronic

26  Serial Number (ESN), Mobile Identification Number (MIN), International Mobile

27  Subscriber Identity (IMSI) number, or International Mobile Equipment Identity (IMEI)

28  number).  These are important evidence because they reveal the service provider, allow

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 12

1   agents to obtain subscriber information, and uniquely identify the telephone.  This

2   information can be used to obtain toll records, to identify contacts by the particular

3   telephone with other cellular telephones used by co-conspirators, to identify other

4   telephones used by the same subscriber or purchased as part of a package, and to confirm

5   if the telephone was contacted by a cooperating source.

6           b.      The stored list of recent received calls and sent calls.  This is important

7   evidence because it identifies telephones recently in contact with the telephone user.  This

8   is valuable information in a drug investigation because it will identify telephones used by

9   other members of the organization, such as suppliers, distributors and customers, and it

10  confirms the date and time of contacts.  If the user is under surveillance, it identifies what

11  number he called during or around the time of a surveilled drug transaction or meeting.

12  Even if a contact involves a telephone user not part of the conspiracy, the information is

13  helpful (and thus is evidence) because it leads to friends and associates of the user who

14  can identify the user, help locate the user, and provide information about the user.

15  Identifying a defendant's law-abiding friends is often just as useful as identifying his

16  drug-trafficking associates.

17          c.      Stored text messages.  These are important evidence, similar to stored

18  numbers.  Agents can identify both drug associates, and friends of the user who likely

19  have helpful information about the user, his location, and his activities.

20          d.      Photographs on a cellular telephone.  These are important evidence because

21  they help identify the user, either through his or her own picture, or through pictures of

22  friends, family, and associates that can identify the user.  Pictures also identify associates

23  likely to be members of the drug trafficking organization.  Some drug traffickers

24  photograph groups of associates, sometimes posing with weapons and showing

25  identifiable gang signs.  Also, digital photos often have embedded "geocode" information

26  within them.  Geocode information is typically the longitude and latitude where the photo

27  was taken.  Showing where the photo was taken can have evidentiary value.  This

28

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 13

1  location information is helpful because, for example, it can show where coconspirators
2  meet, where they travel, and where assets might be located.

3      e.    Stored address records.  These are important evidence because they show
4  the user's close associates and family members, and they contain names and nicknames
5  connected to phone numbers that can be used to identify suspects.

6      43.    Because drug traffickers in many instances will "front" (i.e., sell on
7  consignment) controlled substances to their clients, or alternatively, will be "fronted"
8  these items from their suppliers, such record keeping is necessary to keep track of
9  amounts paid and owed, and such records will also be maintained close at hand so as to
10  readily ascertain current balances.  These records include "pay and owe" records to show
11  balances due for drugs sold in the past (pay) and for payments expected (owe) as to the
12  trafficker's suppliers and distributors, telephone and address listings of clients and
13  suppliers, and records of drug proceeds.  These records are commonly kept for an
14  extended period of time.  I know that although sometimes these records are kept in paper
15  form, some drug dealers also maintain these records in electronic form on their cellular
16  phone and other electronic devices.

17      44.    Firearms and ammunition:  I know that drug traffickers often possess
18  firearms and ammunition, to protect their drug trafficking operations (because drug
19  trafficking is usually a cash-based business), and on occasion to exchange for controlled
20  substances.

21                              **CONCLUSION**

22      45.    Based on the facts set forth in this Affidavit, I believe there is probable
23  cause to believe that, contained within the SUBJECT VEHICLE and the SUBJECT
24  DEVICES, described in Attachment A, there exists evidence, fruits, and
25  instrumentalities, as described in Attachment B, of violations of 21 U.S.C. §§ 841 and
26  846 (distribution of and possession with intent to distribute, controlled substances, and
27  conspiracy to do the same).

28

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

46.     I am submitting this Affidavit and application electronically in accordance with Local Criminal Rule 41(d)(3).

COLTON PRICE
Task Force Officer
FBI Safe Streets Task Force

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the _5th_ day of February 2021.

DAVID W. CHRISTEL
United States Magistrate Judge

AFFIDAVIT OF TASK FORCE OFFICER COLTON PRICE - 15

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800